STATE OF LOUISIANA

VERSUS

FREDDIE B. GATSON

NO. 21-KA-156  C/W
21-KA-157

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-3136, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

December 29, 2021

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Hans J. Liljeberg

<u>**CONVICTIONS AFFIRMED; SENTENCES FOR SIMPLE BATTERY,**</u>
<u>**DOMESTIC ABUSE BATTERY, AND FALSE IMPRISONMENT**</u>
<u>**AFFIRMED**</u>
    **MEJ**
    **JGG**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy Clerk, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Andrea F. Long
 Rachel L. Africk
 Zachary P. Popovich

COUNSEL FOR DEFENDANT/APPELLANT,
FREDDIE B. GATSON
 Jermaine Harris

**JOHNSON, J.**

Defendant, Freddie B. Gatson, appeals his convictions and sentences for possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1, simple assault, in violation of La. R.S. 14:38, domestic abuse battery, in violation of La. R.S. 14:35.3, and false imprisonment, in violation of La. R.S. 14:46, from the 24th Judicial District Court.[1]  For the following reasons, we affirm the convictions for possession of a firearm by a convicted felon and simple assault, the sentence for simple assault, and the misdemeanor convictions and sentences.

*FACTS AND PROCEDURAL HISTORY*

Defendant, Freddie B. Gatson, was charged with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1, and domestic abuse aggravated assault, in violation of La. R.S. 14:37.7, in a bill of information filed on June 26, 2018.  The bill of information also stated that Defendant was previously convicted of possession of Schedule II and III drugs in case number 314,920 in 2013 and Schedule II and IV drugs in case number 328,681 in 2016 in the 9th Judicial District Court for the Parish of Rapides, in violation of La. R.S. 40:967(C), 40:968(C), and 40:969(C).  Defendant was also charged with domestic abuse battery in violation of La. R.S. 14:35.3 and false imprisonment in violation of La. R.S. 14:46 in a separate bill of information[2].  Defendant pled not guilty as to all charges at his arraignment the following day.  Notably, among several motions and notices filed by both the State and Defendant, the State filed a Notice of Intent to

---

[1] Defendant seeks review of his felony convictions and sentences in appeal 21-KA-156 and review of his related misdemeanor convictions and sentences in companion case 21-KA-157.  Because Defendant's felony convictions in 21-KA-156 are so intertwined with the misdemeanor convictions appealed in 21-KA-157, we found the interests of justice and judicial economy dictate that the matters be considered together and consolidated the cases *sua sponte*.  However, Defendant merely adopted his brief from 21-KA-156 for 21-KA-157, and did not brief any assignments of error regarding the misdemeanor charges.  Therefore we consider his appeal in 21-KA-157 to be abandoned.  See Uniform Rules, Courts of Appeal Rules 1-3 and 2-12.4.

[2] Defendant was also charged with possession of marijuana less than fourteen grams in violation of La. R.S. 40:966(C), but on March 5, 2020 the prosecution entered a *nolle prosequi* for that charge in an amended bill of information.

21-KA-156                                                        1

Introduce Evidence of Other Acts, which was granted after a hearing on June 27, 2019.

The jury trial for Defendant's felony charges and the bench trial for his misdemeanor charges were held simultaneously and began on February 18, 2020. On February 19, 2020, a unanimous jury of twelve convicted Defendant of possession of a firearm by a convicted felon and the lesser included offense, simple assault. The judge also convicted Defendant of domestic abuse battery and false imprisonment. The following facts were developed at trial:

On May 23, 2018, Officer Greg Alphonso of the Kenner Police Department was dispatched to 2759 Albany Street around 3:20 p.m. in response to a 9-1-1- call. Approximately ten other officers arrived at the scene at the same time as Officer Alphonso. Because a gun was mentioned by the 9-1-1 caller, rifles were deployed and the officers assumed a tactical stance before knocking on the door of the residence and announcing themselves. In response, Mrs. Leilani Gatson, Defendant's wife, ran out of the door and towards the officers. Mrs. Gatson, whom Officer Alphonso described as scared and visibly shaken, told the officers that her husband was upstairs and he had a gun. The officers then gave verbal commands to anyone inside the home to show themselves. Mr. Gatson came out approximately two minutes later. Another officer immediately detained Defendant and searched him for weapons. No gun was found on Defendant, who continued to yell at Mrs. Gatson. Officer Alphonso testified that it appeared a struggle occurred inside the residence and a bedroom door frame was split. He called for crime scene technicians and escorted Mrs. Gatson back inside the home to interview her.

Officer Alphonso observed no injuries on Mrs. Gatson, but she told him her hand was injured when Defendant grabbed her wrist to take a phone away from her. Mrs. Gatson gave the officers verbal consent to search the home. Crime scene technicians took photographs of the apartment, which were admitted into

evidence. There was a picture of Defendant's property in a bag, which indicated to Officer Alphonso that Defendant did not reside there. A "black high point semi-automatic weapon" was found inside a pink plastic container on a shelf inside the closet of the daughter's bedroom. Officer Alphonso initially confiscated the weapon. The magazine of the gun was empty and a crime scene technician swabbed the gun for DNA and dusted the gun for fingerprints – no fingerprints were found.

Later, Mrs. Gatson and her daughter, Kayla Mays, went to the police station to provide a statement. Officer Alphonso noted that Mrs. Gatson told the officer writing her statement down that Defendant beat on the door of the bedroom and told her that he would break the door down. On February 8, 2020, when Officer Alphonso served Mrs. Gatson and Ms. Mays with subpoenas, Mrs. Gatson "appeared highly agitated [ . . .,] snatched the subpoena" from his hand, and indicated that she was not planning on going to court. A victim assistance coordinator later testified that she and the assistant district attorney spoke with Mrs. Gatson on January 24, 2020. During that call, Mrs. Gatson said that she was available to come to court and gave the district attorney's office names of family members who they could speak with in reference to the case.

The district attorney's office requested calls made by Defendant while he was incarcerated. A Jefferson Parish Sheriff's Office detective and custodian of records for Securus calls described Securus as an internet-based system that records all calls from prisoners housed at the Jefferson Parish Correctional Center. Portions of eight of Defendant's calls made on September 26, 2018 and February 9, 2020 were played for the jury.

In one call, Defendant asks his mother to call "her." After initially refusing, his mother made a three-way call to Defendant's wife. Defendant then asked Mrs. Gatson what she was going to do. Mrs. Gatson replied that she had been calling

the assistant district attorney, who informed her "you can write [your affidavit] but I am still prosecuting him." After Defendant asked her what he was being prosecuted for, his mother said that they could not prosecute him if Mrs. Gatson wrote in the affidavit "that she did that because you were mad." They discussed the gun. Defendant's mother and Mrs. Gatson proceeded to speak at the same time and one said something about Facebook. Defendant's mother stated, "If you want to do something, get him out" and told Mrs. Gatson if she sent the affidavit to her, then "she'll do the rest." Mrs. Gatson hung up shortly thereafter.

In another three-way call between Defendant, Mrs. Gatson, and his mother, Defendant told Mrs. Gatson a few times that they were legally married and that she did not have to do anything she did not want to do. Mrs. Gatson replied that "[the district attorney] is afraid that if I don't say anything, which I'm not, then they have to let you go." Mrs. Gatson told Defendant about the subpoenas she and her daughter received. She also told him that she refused to go downtown to speak to an attorney when requested to do so. Defendant responded, "Just keep it like that." Then, the three discussed dates, the dates on the subpoena, and blocking something on Facebook.

A total of eight calls were played for the jury. Notably discussed during some of the other calls were that Mrs. Gatson only wanted Defendant brought to rehab because he "wasn't himself." Defendant and his mother also continued to tell Mrs. Gatson that she did not have to cooperate with the investigation because they were still legally married and they all discussed Defendant's legal representation. In another call, Defendant and his mother revisited the subject of the affidavit they wanted Mrs. Gatson to write and give to Mrs. Gatson's lawyer. During an earlier call, Mrs. Gatson told them that she had retained counsel because the prosecutors kept wanting to talk to her.

At the time of trial, Kayla Mays was twenty-three years old, worked at a Holiday Inn, and lived with her mother in Kenner. She identified Defendant as her stepfather and said she was about five years old when he entered her and Mrs. Gatson's lives. She was not at home at the time of the incident on May 23, 2018. Ms. Mays testified that she does not own a gun, or keep a gun in her bedroom, and that her mother does not keep a gun in the house. When presented with photographs, Ms. Mays identified her bedroom as it was in May 2018. She identified a storage bin in her bedroom closet which she sometimes used to store makeup. Ms. Mays indicated that the storage bin depicted in the photographs contained a gun but she did not know how the gun got there and reiterated that it was not her gun or her mother's gun.

While growing up, Ms. Mays witnessed instances of Defendant threatening or abusing her mother. She was about twelve or thirteen years old on April 9, 2011 when Defendant pulled a gun out on her and her mother at their apartment in Alexandria, Louisiana. She indicated that Defendant and her mother were arguing, but she was not sure what they were arguing about. She described Defendant as angry and upset. Ms. Mays indicated her mother was scared, but not as scared as she was. Ms. Mays testified that she ran to her room and hid on the side of her bed. Her mother then came in, closed the door and hid with her, until the police came.

After reviewing a police report from July 13, 2011, Ms. Mays recalled her mother and Defendant fighting on that date. Ms. Mays exited her bedroom and began recording them. Ms. Mays testified that Defendant was pushing and hitting her mom. That was the first time she tried to record the abuse but Defendant took the cell phone from her and left the house, so she was unable to show the recording to the police.

Ms. Gwendolyn Gatson, Defendant's aunt, testified that she is close to Defendant and that he stayed in a house across town from her in Alexandria, Louisiana. Ms. Gwendolyn testified that Defendant went to Kenner because Mrs. Gatson told him that if he went to Kenner, she had gifts for him and when she took him to the "bus barn" he had a cell phone, a pack of cigarettes, and a couple of dollars on him. Ms. Gwendolyn testified that Mrs. Gatson told her that Defendant did not have a gun, and indicated that she did not know about the gun. Ms. Gwendolyn, in turn, told an investigator for the public defender, but not the police or the district attorney's office about Mrs. Gatson's statement to her about the gun. Ms. Gwendolyn said that, regarding the May 23, 2018 incident, Mrs. Gatson told her that Defendant was being "loud-mouthed," and the neighbors called the police.

Ms. Gwendolyn said that Mrs. Gatson reached out to her about not wanting to testify. She testified that Mrs. Gatson previously faked her own death while living in Atlanta, Georgia. Ms. Gwendolyn did not have a problem with Mrs. Gatson but stated, "She is not no batter [sic] woman, she's scorned." According to Ms. Gwendolyn, Defendant tried to leave Mrs. Gatson "plenty of times," but every time he tried, "APD came and got him."

Ms. Dona Quintanilla, a latent print examiner with the JPSO crime laboratory, fingerprinted Defendant in court the day before she testified as an expert in latent print processing and comparison. Ms. Quintanilla compared those fingerprints to fingerprints in two certified conviction packets. One of the conviction packets was from August 28, 2013, regarding a guilty plea "for cocaine and Hydrocodone." The other certified conviction packet pertained to a September 29, 2016 guilty plea for "Alprazolam and Hydrocodone." She concluded that the fingerprints in both certified conviction packets were made by Defendant. Ms. Quintanilla also explained that wiping off a surface would influence the ability to lift latent fingerprints.

At the time of trial, Mrs. Gatson and Defendant had been together for seventeen years and married for twelve years. Mrs. Gatson told the prosecutor earlier that she did not want to testify against Defendant and would not testify. She proclaimed she still loved Defendant and stated, "[T]he person I feel right here is not the person that was in my house." She testified that the person in her house was "much, much smaller than that and was on drugs real bad." Mrs. Gatson agreed that she called 9-1-1 on May 23, 2018. That call was played for the jury. Mrs. Gatson stated that she did not respond to the 9-1-1 operator on May 23, 2018 because she threw her phone to keep it away from Defendant. Defendant was on the phone with his mother when she called 9-1-1. Mrs. Gatson admitted that she wanted the police to come to her house and that she whispered into the phone so Defendant would not hear her. She would not acknowledge whether or not she said "Put the gun up," in the 9-1-1 call when asked by the State. After not responding to the prosecution's question about whether or not Defendant had a gun, Mrs. Gatson was advised outside of the presence of the jury that she could be held in contempt of court and jailed if she did not answer the question.

After the jury returned, Mrs. Gatson testified that Defendant had a gun but she did not recall if he pointed it at her. She reviewed her statement from the day of the May 23, 2018 incident again and acknowledged that Defendant banged on her bedroom door when she locked him out. Mrs. Gatson agreed that he was standing in the doorway when she opened the door. She acknowledged that he had a gun in his hand pointed at her at that time, and she told him to get the gun out of her face. Mrs. Gatson said she ran down the stairs and out the door when the police arrived. She acknowledged that the police found the gun in her daughter's closet. Mrs. Gatson stated that the gun found by the police in her daughter's closet did not belong to her daughter, and neither she nor her daughter kept a gun in her daughter's room. Mrs. Gatson stated that, at the time of the incident, she was

dating Roland Robertson, who lived in the house with her and her daughter. However, Mr. Robertson had left the house a few days earlier and was not there on May 23, 2018. Mrs. Gatson had not advised Defendant or anyone else before trial that Roland Robertson lived there, because "[the police] didn't ask".

According to Mrs. Gatson, she and Defendant argued because Defendant wanted to return to Alexandria. She did not recall providing the police a written statement, but when she was presented with the statement, she acknowledged her signature on some of the pages. After reviewing that statement, Mrs. Gatson acknowledged that they, in fact, argued because Defendant asked her to give him five hundred dollars for his birthday.

Mrs. Gatson and Defendant had lived together in Alexandria for a long time before she moved to Kenner. While on the stand, Mrs. Gatson was questioned about twelve incidents between 2008 and 2013 where she had been physically assaulted by Defendant. For most of the incidents, she had no recollection thereof until her memory was refreshed with a corresponding police report. For example, she did not remember Defendant swinging a knife at her after hitting her with fists wrapped in duct tape in 2012, or attacking her at work later that year.

Additionally, there were four incidents besides the one on May 23, 2018, where Defendant threatened or struck Mrs. Gatson with a gun. Notably, Mrs. Gatson did recall Defendant threatening her and a cousin, Anjanette Jefferson, with a .25 caliber silver handgun on Halloween 2011, but she did not remember running away to hide from Defendant with her daughter when he pointed a gun and threatened to shoot her on Boxing Day that same year. She acknowledged that she "probably" could not remember the specific incidents because similar incidents occurred so many times when she and Defendant lived together in Alexandria.

Mrs. Gatson testified that she still loves her husband and denied that Defendant scared her or attempted to intimidate her into not going to court. Mrs.

Gatson also said she was not afraid of being shot during the May 23, 2018 incident. Mrs. Gatson denied telling Defendant's aunt, Gwendolyn Gatson, that Defendant did not have a gun that day, or that she did not know there was a gun at the house. She also denied fabricating or embellishing the nature of what happened during prior incidents between her and Defendant.

On February 19, 2020, on the second day of trial, Defendant was found guilty by a unanimous jury of twelve on count 1--possession of a firearm by a felon-- and count two--simple assault-- by responsive verdict. Defendant filed motions for post-verdict judgment of acquittal and for a new trial, which were denied on March 5, 2020. That same day, counsel waived sentencing delays and Defendant was sentenced to twenty years at hard labor for count one, plus a fine of five thousand dollars. As to count two, Defendant was sentenced to ninety days in parish prison, to be served concurrently with the sentence for count one. After sentencing, the trial court also denied Defendant's motion to reconsider sentence, filed prematurely a few days before.

On March 12, 2020, the State filed a multiple offender bill of information as to count one, alleging that Defendant was a second-felony offender. Defendant filed a response to the multiple bill on March 20, 2020. On March 23, 2020 Defendant filed a motion to appeal the February 19, 2020 verdicts and the sentences imposed on March 5, 2020. The next day, Defendant filed a *pro se* Notice of Intent stating that he wished to appeal the jury verdict for count one because of prejudicial error that occurred during trial. Defendant also filed a *pro se* Motion for Objection to the Habitual Offender Bill. On April 2, 2020, Defendant filed a *pro se* Motion and Order for Reconsideration of Sentence La. C.Cr.P. art. 881, wherein he asked the court to reconsider "the excessive sentence imposed [for count one]. That the offense is not a violent offense and the twenty-year sentence is constitutionally excessive."

The multiple offender bill hearing was held on March 4, 2021. After testimony that Defendant's fingerprints matched the fingerprints in a certified conviction packet regarding a 2009 guilty plea to second degree battery, the district court found Defendant to be a second-felony offender, vacated the original sentence as to count one, and then sentenced Defendant to thirty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant then made an oral motion to reconsider sentence, which the trial court denied.

*LAW AND DISCUSSION*

Defendant assigns the following as errors:

1. The evidence that was presented at trial was insufficient to support a conviction of Possession of a Firearm by a Convicted Felon.

2. Mr. Gatson was denied his federal and state rights to a fair trial due to the trial court's admission of other crimes evidence.

3. The trial court's imposition of a sentence of thirty years on Possession of a firearm by a Convicted Felon as a second felony offender under the multiple offender bill violated the state constitutional prohibition against excessive sentences.

4. The trial court erred when it failed to sufficiently articulate reasons for imposing sentence as required by Louisiana Code of Criminal Procedure Article 894.1.

5. Mr. Gatson was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution due to trial counsel's failure to request that the trial court order a presentence investigation (PSI) and due to trial counsel's failure to present any mitigating evidence during the sentencing hearing.

We note that Defendant did not file a motion to appeal the enhanced sentence he received as a result of his adjudication as a second-felony offender. Therefore, the third and fourth assignments of error are not properly before the court at this time and we pretermit further discussion of those assignments of error.[3]

---

[3] *See State v. Counterman*, 475 So.2d 336, 339 (La. 1985): *State v. Clark*, 19-522 (La. App. 5 Cir. 6/24/20), 299 So.3d 1228, *writ denied*, 21-62 (La. 3/9/21), 312 So.3d 585.

*Assignment of Error Number One*

The evidence that was presented at trial was insufficient to support a conviction of Possession of a Firearm by a Convicted Felon.

In his first assignment of error, Defendant alleges that the State did not prove beyond a reasonable doubt that Defendant possessed the firearm found in a bedroom closet of a home in which Defendant did not reside. Defendant also argues he was not in actual possession of the firearm when apprehended by law enforcement, neither his DNA nor fingerprints were found on the firearm, and that there was no video or photographic evidence of him with the firearm. Mrs. Gatson testified to seeing Defendant with a firearm but Ms. Gwendolyn testified that Mrs. Gatson told her that Defendant did not have a firearm. Defendant observes that Mrs. Gatson initially refused to answer questions regarding whether he had a firearm until she was instructed by the trial court that she could be held in contempt or go to jail if she did not answer.

Defendant also contends that Roland Robertson, Mrs. Gatson's paramour, who lived at her house but was not present on the day of the incident, could have owned the firearm. Defendant avers Mrs. Gatson had motive to "falsely report the Defendant to law enforcement to remove the defendant from the picture due to her new relationship." Mrs. Gatson did not mention Mr. Robertson to anyone prior to her testimony. Thus, Defendant concludes that the evidence was insufficient to support his conviction for possession of a firearm by a convicted felon.

---

The defendant who has failed to appeal timely should seek reinstatement of his right to appeal in the district court in which the conviction was obtained. The district court is clearly in the best position, after notice to the district attorney and after a hearing (if necessary), to determine whether the applicant is entitled to relief. [ . . . ]
We further conclude that the appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal, after the delay provided in Article 914 has expired, is an application for post conviction relief pursuant to Articles 924-930.[8].

Defendant can file an application for post-conviction relief to request an out-of-time appeal, should he desire appellate review of the enhanced sentence he received as a multiple offender for count one – possession of a firearm by a convicted felon – earlier this year.

The State counters that it proved the essential elements beyond a reasonable doubt. Mrs. Gatson testified that Defendant had a gun and that the police found a gun in her daughter's closet. The State asserts that Mrs. Gatson's feelings for Defendant, her reluctance to testify, and her desire to avoid implicating Defendant actually enhanced her credibility regarding the inculpatory points of her testimony. The State notes that on the 9-1-1 call recording the victim makes references to a gun. Officer Alphonso testified that Mrs. Gatson said her husband was upstairs with a gun. The State asserts that a jury could have reasonably concluded that Defendant used the two minutes before he exited the residence to hide the gun.

The State also noted that the gun was found in Ms. Mays' bedroom, and Ms. Mays testified that she did not know how the gun came to be in her room but it did not belong to her or her mother. Ms. Mays also testified that no one besides her and her mother were living there at the time. Mrs. Gatson testified that the gun did not belong to her or her daughter, and she denied telling Defendant's aunt, Ms. Gwendolyn, that he did not have a gun. The State argues that the jury heard evidence reflecting that Defendant had attempted to dissuade Mrs. Gatson from cooperating with prosecutors and appearing in court to testify. The State also notes that Defendant not only intended to and did possess the weapon, despite being prohibited from doing so based upon his convicted felon status, but that he consciously brandished the firearm for the purpose of threatening the victim. As such, the State asserts that this claim is without merit.

The question of sufficiency of evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal under La. C.Cr.P. art. 821. *State v. Bazley*, 09-358 (La. App. 5 Cir. 1/11/11); 60 So.3d 7, 18, *writ denied*, 11-282 (La. 6/17/11); 63 So.3d 1039. In the case *sub judice*, Defendant filed a Motion for Post Verdict Judgment of Acquittal, arguing that the State was unable to meet its burden of proof as to possession of a firearm by a convicted felon and simple

assault, which was denied on March 5, 2020. On appeal, Defendant only challenges the sufficiency of the evidence as to the count of possession of a firearm by a convicted felon.

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10); 41 So.3d 532, 534, *writ denied*, 10-1357 (La. 1/7/11); 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08); 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. *Id.*; *State v. Price*, 00-1883 (La. App. 5 Cir. 7/30/01); 792 So.2d 180, 184.

The requirement that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to "the actual trier of fact's rational credibility calls, evidence weighing and inference drawing." *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09); 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10); 27 So.3d 297. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Miller*, 20-182 (La. App. 5 Cir. 12/23/20); 308 So.3d 1246, 1256, *writ denied*, 21-233 (La. 4/27/21); 314 So.3d 838. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's

testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *Caffrey*, *supra*. "The reviewing court is not permitted 'to decide whether it believes the witness or whether the conviction is contrary to the weight of the evidence.'" *Id*. It is not the function of the appellate court to assess credibility or re-weigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95); 661 So.2d 442, 443; *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21); 314 So.3d 914, *writ denied*, 21-350 (La. 6/8/21); 317 So.3d 321.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Williams*, 05-59 (La. App. 5 Cir. 5/31/05); 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that assuming that the evidence tends to prove every fact to be proven, "in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Wooten*, 99-181 (La. App. 5 Cir. 6/1/99); 738 So.2d 672, 675, *writ denied*, 99-2057 (La. 1/14/00); 753 So.2d 208. This is not a separate test from the *Jackson* standard but rather provides a helpful basis for determining the existence of reasonable doubt. *Id*.

To support a conviction of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. *State v. Kelly*, 19-425 (La. App. 5 Cir. 7/31/20); 299 So.3d 1284, 1288.

Defendant does not dispute that the State established a prior felony conviction, or that the prior conviction was within ten-year statutory period of limitations, or his identity as the same person previously convicted. Instead, Defendant argues that the State failed to present evidence that he had actual

possession of the firearm and questions the credibility of Mrs. Gatson's testimony. However, actual possession of a firearm is not necessary to prove the possession element of La. R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession. *See State v. Day*, 410 So.2d 741, 743 (La. 1982); *State v. Jones*, 09-688 (La. App. 5 Cir. 2/9/10); 33 So.3d 306, 314. A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. *Mickel*, 41 So.3d at 535; *State v. Johnson*, 03-1228 (La. 4/14/04); 870 So.2d 995, 998. A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. *State v. Harrell*, 18-63 (La. App. 5 Cir. 10/17/18); 258 So.3d 1007, 1012; *Johnson*, *supra*.

A defendant's mere presence in an area where a firearm was found does not necessarily establish possession. *State v. Perry*, 17-567 (La. App. 5 Cir. 6/27/18); 250 So.3d 1180, 1197, *writ denied*, 18-1325 (La. 11/14/18); 256 So.3d 285. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. *Id*. The question of whether there is sufficient "possession" to convict is dependent on the facts of each case. *Mickel*, *supra*.

In the instant matter, Officer Alphonso testified that when he and other officers arrived at the residence on May 23, 2018, Mrs. Gatson immediately exited the home. Defendant exited the home approximately two minutes later. Mrs. Gatson and Defendant had been the only occupants of the residence at that time of the incident. Mrs. Gatson told Officer Alphonso that Defendant had a gun, which police later found inside a pink plastic container on a shelf in the closet of Mrs. Gatson's daughter's bedroom.

Also, Mrs. Gatson testified that Defendant had a gun during the May 23 incident. In the 9-1-1 call, a woman can be heard stating that someone overheard Defendant through a balcony door say he was going to shoot Mrs. Gatson. Another officer testified that the "CAD printout" for the 9-1-1 call contained a comment on the printout that read "in possession of a 95G," and the notation meant that there was a handgun inside the apartment.

Ms. Gatson and her daughter Ms. Mays testified that the gun found in her daughter's closet did not belong to either of them.  Mrs. Gatson admitted that Defendant fled their previous home with a gun after an incident in July 2011. Ms. Mays confirmed that Defendant brandished a gun and pointed it at her and her mother in July of 2011, when they all lived together in Alexandria.  Mrs. Gatson also testified that Defendant threatened her and her cousin, Ms. Jefferson, with a .25 caliber silver handgun in October 2011.  Mrs. Gatson also denied telling Ms. Gwendolyn that Defendant did not have a gun on May 23, 2018, or that she did not know there was a gun at the house.

Here, the jury was presented with conflicting testimony and made a credibility determination.  The jury believed that the gun did not belong to either Mrs. Gatson or Ms. Mays.  Despite Ms. Gwendolyn's testimony that Defendant did not have a gun when he left Alexandria, and Mrs. Gatson told her that Defendant did not have a gun, plus the introduction of the possibility that the gun belonged to Mrs. Gatson's paramour, the jury found that Defendant was in possession of the gun.

The jury found the testimony of Officer Alphonso, Mrs. Gatson, and her daughter credible, and the credibility of witnesses will not be reweighed on appeal. We also note that the State presented evidence that, in the past, Defendant had threatened Mrs. Gatson and other family members with weapons during previous incidents.  We therefore find this assignment of error is without merit.  The State

presented sufficient proof for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of possession and intent, beyond a reasonable doubt.

*ASSIGNMENT OF ERROR NUMBER TWO*

Mr. Gatson was denied his federal and state rights to a fair trial due to the trial court's admission of other crimes evidence.

Defendant asserts that the State admitted other crimes evidence through several witnesses pertaining to at least four unrelated incidents wherein he was accused of committing crimes against Mrs. Gatson. Defendant contends that the State did not prove by clear and convincing evidence that any of the other crimes or bad acts occurred. He alleges the other crimes evidence was "too dissimilar to the current underlying charges," repetitive and cumulative, and the probative value of the evidence was outweighed by the unfair prejudice to him. Defendant argues that the other crimes evidence served to show that he was of bad character -- a "bad guy," confused the jury, and convinced them that Defendant had "committed so many crimes against this victim over the years that he has to be guilty of the current charge."

The State counters that the trial court did not abuse its discretion in allowing the other crimes evidence. On June 5, 2019, the State filed a Notice of Intent to Introduce Evidence of Other Acts under La. C.E. arts. 404(B) and 412.4 and admitted into evidence State's Exhibits A through Q, attached to the State's motion and pertaining to past domestic abuse incidents, at the hearing on the motion held on June 27, 2019. The State asserts that the evidence was relevant, provided context to the incident, and went to intent. The State avers that his pattern of abusive acts during the long-term relationship with the victim evidenced that he initiated and engaged in acts of violence against her that often included guns and weapons. A history of Defendant's threatening and abusive conduct towards Mrs.

Gatson places into context "the victim's subsequent uncooperative behavior and reticence to testify against the defendant at trial" and the State notes that Mrs. Gatson frequently claimed she did not remember when she was questioned about prior abuse. Citing *State v. Hamilton*, 15-1810 (La. 1/18/16); 209 So.3d 750, 751,[4] the State insists that the prior acts were independently relevant because the gun was hidden in a closet rather than on Defendant's person.

The State contends that the evidence was presented in a clear, organized, and orderly manner and did not confuse or mislead the jury. The State avers that the returned, responsive verdict convicting Defendant on count two, simple assault, negates Defendant's argument that the jury was improperly influenced by the contested evidence. The State argues that, nevertheless, any error would be harmless.

The State further contends that "[La. C.E.] art. 412.4 codifies jurisprudence which has always allowed this type of evidence to come in in the matters of domestic violence cases and now it allows for the admissibility of this information with regard to assaultive behavior on family members, which clearly in this case exists in this matter." The State thus concluded that it satisfied all of the prongs under La. C.E. arts. 404(B) and 412.4.

Generally, evidence of other crimes committed by a defendant is inadmissible at trial due to the risk of grave prejudice to the defendant. *State v. Williams*, 01-1007 (La. App. 5 Cir. 2/26/02); 811 So.2d 1026, 1030, *writ denied*, 08-2070 (La. 1/30/09); 999 So.2d 751. Evidence of other acts of misconduct is generally not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes

---

[4] In *Hamilton*, *supra*, the Supreme Court found that use of evidence pertaining to a prior assault rifle crime was permissible to show "'intent,' 'knowledge,' and 'absence of mistake or accident'" when the defendant was facing a charge of possession of a firearm by a felon, but no firearm was found on the defendant at the time of his arrest.

him or her as a "bad person." *State v. Ventris*, 10-889 (La. App. 5 Cir. 11/15/11); 79 So.3d 1108, 1123-24.

However, such evidence may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule when it tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character. *State v. Montero*, 18-397 (La. App. 5 Cir. 12/19/18); 263 So.3d 899, 907. Evidence of other crimes is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad acts. La. C.E. art. 404(B)(1); *State v. Lawson*, 08-123 (La. App. 5 Cir. 11/12/08); 1 So.3d 516, 525. The State must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. Additionally, the State must prove that the defendant committed the other acts. *State v. Napoleon*, 12-749 (La. App. 5 Cir. 5/16/13); 119 So.3d 238, 242.

In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. *Lawson*, 1 So.3d at 525-26. A statutory exception to the exclusionary rule can be found in La. C.E. art. 412.4, which states in pertinent part:

> A. When an accused is charged with a crime involving abusive behavior against a family member, household member, or dating partner or with acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a family member, household member, or dating partner or acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.

\* \* \*

D. For purposes of this Article:

(1) "Abusive behavior" means any behavior of the offender involving the use or threatened use of force against the person or property of a family member, household member, or dating partner of the alleged offender.

\* \* \*

(3) "Family member" means spouses, former spouses, parents and children, stepparents, stepchildren, foster parents, foster children, other ascendants, and other descendants. …

The admissibility of evidence under this article is not limited to those actions that are identical or similar in nature to the charged crime. *State v. Thomas*, 19-582 (La. App. 5 Cir. 7/29/20); 300 So.3d 517, 527, *writ denied*, 20-1503 (La. 3/2/21); 311 So.3d 1053.

Evidence of prior acts of domestic abuse is also admissible if relevant and the probative value outweighs the prejudicial effect. *Thomas*, 300 So.3d at 527. As used in this balancing test, prejudice limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id.* The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged. *State v. Smith*, 19-607 (La. App. 5 Cir. 1/21/20); 2020 WL 356010, *writ denied*, 20-328 (La. 5/1/20); 295 So.3d 945.

The burden is on the defendant to show that he was prejudiced by the admission of other crimes evidence. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. *State v. Le*, 13-314 (La. App. 5 Cir. 12/12/13); 131 So.3d 306, 317, *writ not considered*, 14-934 (La. 6/3/16); 192 So.3d 757. The same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.4. *See State v. Wright*, 11-141 (La. 12/6/11); 79 So.3d 309, 316.

On appeal, an improper reference to other crimes evidence is subject to the harmless error rule, i.e., whether the verdict actually rendered in the case was surely unattributable to the error. *See State v. Nelson*, 02-65 (La. App. 5 Cir. 6/26/02); 822 So.2d 796, 804-05, *writ denied*, 02-2090 (La. 2/21/03); 837 So.2d 627.

In *State v. Mitchell*, 18-326 (La. App. 5 Cir. 12/27/18); 263 So.3d 967, the defendant shot and killed his ex-wife after an argument about the victim's infidelities. On appeal, the defendant challenged the district court's admission of other crimes evidence at trial, consisting of several prior incidents of domestic abuse between himself and the victim, pursuant to La. C.E. arts. 404(B)(1) and 412.4. *Id*. at 971. Of the five prior incidents introduced, two resulted in guilty pleas, one charge was dropped, and the final two matters were pending at the time of the murder trial. In determining that the probative value of the evidence outweighed its prejudicial effect, this Court found that the evidence, which was independently relevant to show a pattern of domestic abuse of the victim by the defendant, placed the defendant's shooting of the victim in proper context. *Id*. at 973. This Court concluded that the district court did not abuse its discretion, the other evidence presented by the State was sufficient to prove the defendant's guilt, and the admission of the other crimes evidence, if improper, was harmless error. *Id*.; *See also State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), 2021 WL 1660916, --- So.3d --- (finding on appeal probative value of evidence of prior incident where defendant broke victim's front door and an interior door outweighed the danger of unfair prejudice, and affirming defendant's conviction of domestic abuse battery by strangulation.)

Here, we also find that the admission of evidence pertaining to the prior incidents was not an abuse of discretion, was independently relevant to show a pattern of domestic abuse, gave proper context to Defendant's current charges, and

demonstrated to the jury the volatile nature of Defendant and Mrs. Gatson's relationship. The other crimes evidence is also relevant to establishing Defendant's intent, knowledge, and absence of mistake or accident regarding count one - possession of a firearm by a felon. *See Galliano*, 02-2849 (La. App. 5 Cir. 1/10/03); 839 So.2d 932, 933-34. Defendant threatened Mrs. Gatson, and other family members on other occasions with weapons, as far back as 2011. Although the evidence at issue is prejudicial, it is not so inflammatory as to create an unacceptable risk of luring jurors into declaring guilt on a ground different from proof specific to the offense charged.

Further, even if the trial court erred in allowing admission of the evidence, the erroneous admission of other crimes evidence is subject to harmless error analysis. *State v. Williams*, 05-318 (La. 1/17/06), 921 So.2d 1033, 1036, *writ denied*, 06-973 (La. 11/3/06), 940 So.2d 654. The guilty verdicts returned in this case were surely unattributable to any erroneously admitted evidence of similar wrongs or acts. Officer Alphonso testified that officers assumed a tactical stance in responding to the 9-1-1 dispatch because they were advised a suspect had a gun. Upon exiting her residence, Mrs. Gatson told officers responding to the incident that Defendant was upstairs and had a gun. Mrs. Gatson reluctantly admitted during her testimony that Defendant had a gun. Both Mrs. Gatson and Ms. Mays testified that the gun found in the home did not belong to either of them.

Even if the other crimes evidence were improperly admitted, there is evidence apart from the other crimes evidence to support Defendant's convictions of possession of a firearm by a convicted felon and simple assault, and we find that the verdicts in this case were surely unattributable to any error regarding the admission of the prior incidents of abuse. Therefore, Defendant's second assignment of error also lacks merit.

*Assignment of Error Number Five*

Mr. Gatson was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. constitution due to the trial counsel's failure to request that the trial court order a presentence investigation (PSI) and due to trial counsel's failure to present any mitigating evidence during the sentencing hearing.

Defendant argues that he was denied effective assistance of counsel at trial. He avers that trial counsel failed to request that the court order a PSI and trial counsel did not object to the court's failure to order one. He contends that a PSI would have revealed mitigating circumstances and trial counsel failed to present any mitigating evidence. Defendant notes that trial counsel did not call anyone to testify on his behalf or testify as to his background, work history, or medical history.

The State asserts that there is no requirement that a PSI be ordered. The State provides that any argument that the substance of a PSI report would have been favorable to him is entirely speculative. The State further argues that Defendant has not established that mitigating evidence actually existed that may have favorably impacted his sentence. The State notes that, given that jailhouse calls showed that members of Defendant's family assisted him in attempting to subvert the criminal justice process, trial counsel may have considered calling witnesses at the sentencing hearing to be strategically inadvisable. The State concludes that Defendant's conclusory assertions fall short of meeting his burden of proof regarding his ineffective assistance of counsel claims.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. *State v. Karim*, 19-133 (La. App. 5 Cir. 9/9/20); 302 So.3d 1200, *writ denied*, 20-1185 (La. 1/12/21); 308 So.3d 713; *State v. Francois*, 13-616 (La. App. 5 Cir. 1/31/14); 134 So.3d 42, 58, *writ denied*, 14-431 (La. 9/26/14); 149 So.3d 261. Under the standard for ineffective assistance of counsel set forth

in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), a conviction must be reversed if the defendant proves: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *Karim*, *supra*.

To prevail, the accused must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Rivas*, 17-615 (La. App. 5 Cir. 7/31/18); 251 So.3d 1228, 1233 (citing *Strickland*, *supra*). Any inquiry into the effectiveness of counsel must be specific to the facts of the case and must take into consideration the counsel's perspective at the time. *Id*. Furthermore, "[g]eneral statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel." *State v. Fisher*, 19-488 (La. App. 5 Cir. 6/24/20); 299 So.3d 1238, 1247 (citing *State v. Celestine*, 11-1403 (La. App. 3 Cir. 5/30/12); 91 So.3d 573, 579).

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Ferrera*, 16-243 (La. App. 5 Cir. 12/14/16); 208 So.3d 1060, 1067. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id*. If, on the other hand, the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.Cr.P. arts. 924-930.8. *Id.*

In *State v. Griffin*, 10-36 (La. App. 3 Cir. 6/2/10), 41 So.3d 563, the defendant argued on appeal that defense counsel was ineffective for failing to offer

any evidence in mitigation of his sentence or to move for a PSI. The court found that the defendant had only asserted general statements and conclusory allegations and noted he did not claim that a PSI would, in fact, contain mitigating evidence. Also, the defendant did not specify any particular fact or evidence that defense counsel should have presented at sentencing, or show how defense counsel's performance was deficient. The court concluded that the defendant did not satisfy the first prong of the *Strickland* test.

Similar to the defendant in *Griffin,* Defendant did not specifically provide what information about mitigating circumstances that would have been included in the PSI. Defendant did not mention who should have been called to testify on his behalf regarding sentencing, or what mitigating information would have been provided. Defendant has not adequately supported his claim that trial counsel's performance fell below an objective standard of reasonableness and that counsel's inadequate performance prejudiced Defendant, pursuant to *Strickland*. Consequently, this assignment of error is also without merit.

Additionally, La. C.Cr.P. art. 875(A)(1) states, "If a defendant is convicted of a felony offense or a misdemeanor offense that has been reduced from a felony, the court may order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation." It is noted a defendant does not have a right to a PSI; a PSI is an aid to the trial court and ordered at its discretion. La. C.Cr.P. art. 875; *State v. Torres*, 05-260 (La. App. 5 Cir. 11/29/05); 919 So.2d 730, 735, *writ denied*, 06-697 (La. 10/6/06); 938 So.2d 65. As such, we find that the trial court did not abuse its discretion in not ordering a PSI.

*ERRORS PATENT DISCUSSION*

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175

(La. App. 5th Cir. 1990).   Although the minute entry for the original sentencing reflects that Defendant was properly advised, pursuant to La. C.Cr.P. art. 930.8 that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief, the transcript does not. Based on the transcripts, Defendant was not advised as to the time available to seek post-conviction relief at the multiple bill proceeding either. Where there is a discrepancy between the transcript and the minute entry, the transcript generally prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

It is well-settled that if a trial court fails to advise the defendant pursuant to La. C.Cr.P. art. 930.8, or provides an incomplete advisal, then the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Taylor*, 20-215 (La. App. 5 Cir. 4/28/21); 2021 WL 1659865, --- So.3d ---. Accordingly, we inform Defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

### *DECREE*

For the foregoing reasons, we affirm Defendant's convictions in Case No. 21-KA-156 and Case No. 21-KA-157, his sentences in Case No. 21-KA-157, and his sentence on count two only in Case No. 21-KA-156, as Defendant has not yet appealed the enhanced sentence he received after his original sentence on count one was vacated.

**CONVICTIONS AFFIRMED;**
**SENTENCES FOR SIMPLE BATTERY,**
**DOMESTIC ABUSE BATTERY,**
**AND FALSE IMPRISONMENT AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 29, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_CURTIS B. PURSELL_
CLERK OF COURT

# 21-KA-156
**C/W 21-KA-157**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JERMAINE HARRIS (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
RACHEL L. AFRICK (APPELLEE)
DISTRICT ATTORNEY
ZACHARY P. POPOVICH (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053